*Margin note:* When a note demandable immediately, is on interest from any given month, without particularizing the year, it means the month of that name next antecedent to the date of the note. If there be one good count, and a demurrer put in to the whole declaration, judgment will be for the plaintiff. tho' a special cause be assigned, which is applicable to only one of the counts.

## Robert I. Thurston *against* The Columbian Insurance Company.

UPON a policy on the sloop *Dolores*, *Elihu Utley*, master, from *New-York* to the *Havanna*, and back again, valued at one thousand four hundred dollars.

The declaration was for a total loss, by the barratry of the master. Plea, *non assumpsit*, and a verdict taken for the plaintiff, subject to the opinion of the court on the following case, made on behalf of the defendants.

By bill of sale, dated the 15th of *July* 1801, *Utley*, in consideration of 1200 dollars, conveyed the sloop *Dolores* to the plaintiff, who, on the 17th effected the present insurance, and in the course of the same month the vessel duly sailed on the voyage described. On the 22d of *August* succeeding, *Utley*, after a safe arrival at the *Havana*, wrote a letter to the plaintiff, informing him of the arrival of the vessel, and that he *(Utley)* had con-

*Margin note:* If an assured be apprised by his master, of his pursuing another voyage than that insured, on which he has been sent, and do not disapprove of it, it is only a deviation and not barratry, though the master ultimately run away with the ship, sell her and embezzle the proceeds.

M

signed her to the house of *Simon Poey*, but that, for want of a cer-tificate from the Spanish consul, the sloop was not permitted to enter. On the third of *September* a second letter was written by *Utley* to his owner, mentioning the same impediment, and re-questing the certificate to be forwarded. On the 15th, the plain-tiff received the first letter of his master, who, on the twenty-sixth, wrote a third time, saying that the *Dolores* had, the day be-fore been permitted to discharge and depart from the *Havanna*, on giving security that the consular certificate should be produc-ed within a specific time, but that having lost a second freight for *New-York*, in consequence of the delay in transmitting it, he should accept of one, which offered for *Charleston*, to the amount of about 800 dollars, of molasses, to be shipped from the port of *Haruco*, about seven leagues to windward of the *Havanna*. That after having taken in this cargo, he should proceed to *Charleston* and from thence to *New-York*, desiring insurance to be made on the vessel and freight. This letter was followed by another to the same effect, dated the 2d of *October*. The two letters writ-ten in *September* were received by the plaintiff in the beginning of *November*, about which time *Utley*, with the loading he had men-tioned, sailed for *Charleston*, where he arrived the *December* after. From thence he wrote to the plaintiff, that finding no chance of a freight for *New-York*, he had taken one for the *Havanna*, but was, by contract, to return to *Charleston*, and would, after that, proceed to *New-York*, when he hoped to be able to discharge his obliga-tions, of which he was not unmindful, adding "do not be uneasy; "I have the vessel fully insured for the voyage in case of any "accident, that I may not fail of my present hopes, which are to "make payment as soon as possible, as my account has been long-"er standing than I had any idea of at the time of contract." The plaintiff, on the receipt of this letter, caused enquiry to be made respecting the sloop, and found, that about two days after it was written, she had cleared out for the *Havanna*, from whence *Utley* wrote, that finding a good opportunity to sell the vessel, he should do so, though he was obliged to go to the *Man anzas* for the mo-ney, and, when about to return to *New-York*, would give timely advice, that insurance might be made, saying "it was imposing "on good nature, to stay away so long, although he could do no "better, was the same to do again." After this letter had come to hand, another on the first day of *July* 1802, reached the plain-tiff from *St. Augustine*, bearing date, the 28th of *April* preced-

NEW-YORK,
May, 1805

Thurston
v.
C I Company.

.ing, in which *Utley* mentions, that after selling the *Dolores* for a good price, he had been robbed of all the money, excepting 350 .dollars, which was inadequate to discharge his debt to the plaintiff, but that he hoped in a short time to return and do it, when he would give satisfaction for his absence.

On the 15th of *July* 1802, the plaintiff abandoned, adducing as proofs of interest and loss, the bill of sale, and the letters above-mentioned.

It was admitted that *Utley* had not returned, neither had he paid to the plaintiff the proceeds of the sloop, nor accounted with him for them.

*Jones*, for the defendants, made three points, 1st, That the voyage from the *Havanna* to *Charleston*, and the actual sailing of the *Dolores* from the *Havanna* to *Haruco* for a freight to *Charleston*, was either an abandonment, or a change of the voyage insured, or a deviation, and discharged the owners of their obligation. 2d, That the acts and conduct of the master, must have been according to his duty and by the authority of the owner, or, if unauthorized, that the same were adopted, or acquiesced in by the owner. 3d, That the offer to abandon was made too late. being after the assured (having elected not to abandon) had lost his right so to do, if, at any time, he had such right.

As to there having been a deviation in fact, no question can be made. For instead of returning to *New-York*, the vessel sailed from *Charleston*. This however is explained to be a barratrous voyage. But to make it so, it must be in fraud of the owner, without his authority, and by a master who is not owner. It may well be inferred that the master of the *Dolores* was her owner, but if he was so, this I admit ought to be shewn by the underwriter. Still, however, the circumstances evince the measures adopted, were for the benefit of the owner; they could not therefore amount to barratry.

*Kendrick* v. *Delafield*, 2 *N. Y. T. R.* 67. But it is known in these *West-India* voyages, very great discretionary powers are invested in the captains.

KENT, C. J. We do not see any thing like barratry in the case, and should wish to hear the other side on this point.

*Hoffman*, contra. If *Utley's* going to *Charleston* was contrary to his duty, it was barratry.. The benefit of his owners could not have been intended, for he has never since returned, and has actually gone off with the proceeds of the vessel. The frequent

NEW-YORK,
May, 1805.

communication kept up with the owner, was only to lull into secu-
rity, the more certainly to ultimately effect his barratrous design,
and in this case, the first part of *Utley's* conduct is to be inter-
preted by the last; the running away with, and embezzling the
vessel.

*Per curiam*, stopping *Pendleton* in reply. There is not suf-
ficient evidence of barratry, and that is the only cause of loss
stated. Judgment must therefore be entered for the defendants.